FILED: February 9, 2006



IN THE SUPREME COURT OF THE STATE OF 

OREGON


DAVID J. HUNNICUTT,


Petitioner,


v.



HARDY MYERS,
Attorney General,
State of Oregon,


Respondent.



(SC S52977)



En Banc



On petition to review ballot title.



Submitted on the record January 24, 2006.



Ross A. Day, Tigard, filed the petition and the reply
memorandum for petitioner.



Denise G. Fjordbeck, Assistant Attorney General, Salem,
filed the answering memorandum for respondent. With her on the
answering memorandum were Hardy Myers, Attorney General, and Mary
H. Williams, Solicitor General.



KISTLER, J.



Ballot title referred to Attorney General for modification.



Gillette, J., dissented and filed an opinion in which Riggs
and Balmer, JJ., joined.



KISTLER, J.


Petitioner challenges the Attorney General's certified
ballot title for Initiative Petition 80 (2006). Because the
ballot title does not substantially comply with the standards set
out in ORS 250.035(2), we refer the ballot title to the Attorney
General for modification.


Initiative Petition 80, if enacted, would affect a
public body's authority to regulate the use of real
property. (1) The proposed measure has two main parts. First,
the proposed measure would prevent a public body from waiving
existing land use laws (2) and relieve it of its obligation
under those laws to pay just compensation in two situations: (1)
when allowing the proposed use "would reduce the value of a
neighboring home or harm a neighboring family farm" and (2) when
a corporation or developer seeks to "divide, build on or use land
in violation of land use laws." Second, the proposed measure
provides that a property owner may build a single family home on
the property owner's homestead tract if the property owner could
have done so when he or she acquired that tract.


The Attorney General certified the following ballot
title:


"LIMITS GOVERNMENT AUTHORITY TO WAIVE LAND USE
REGULATIONS; ALLOWS DWELLING IF ALLOWED WHEN PROPERTY
ACQUIRED



"RESULT OF 'YES' VOTE: 'Yes' vote prohibits
government from waiving land use regulation if proposed
use would reduce value of neighboring home, family
farm; allows certain single family dwellings.



"RESULT OF 'NO' VOTE: 'No' vote retains current
law allowing government to waive land use regulation
enacted after current owner acquired property, in lieu
of compensation for diminished value.



"SUMMARY: Under current law, if land use
regulation is enacted after property is acquired and
regulation restricts use, reduces fair market value of
property, government must pay just compensation or may
instead, at government's option, waive regulation. 
This measure prohibits government from waiving land use
regulation if waiver reduces value of neighboring home
or harms neighboring family farm; government would not
be required to pay compensation in such cases. 
Prohibits corporation (defined) or developer (defined)
from obtaining compensation or waiver. Allows property
owner to construct single family dwelling if would have
been allowed when property acquired. May be enforced
by affected homeowner or family farm; burden of
demonstrating compliance with law is on government,
corporation, developer. Prevailing homeowner, farmer
entitled to costs, attorney fees. Other provisions."



Petitioner has filed a petition to review the certified
ballot title. He has challenged the caption, the "yes" vote
result statement, the "no" vote result statement, and the
summary. Before turning to those challenges, we first discuss a
procedural issue. ORAP 11.30 sets out the rules governing
petitions for review of ballot titles. ORAP 11.30(4) provides
that "[t]he body of the petition shall be no longer than 10 pages
* * *." Because the petition in this case was 16 pages long,
this court asked petitioner to show cause why it should not
strike his petition and, in view of the strict statutory time
limits for challenging a ballot title, dismiss his ballot title
challenge. In response, petitioner filed, among other things, a
late motion for leave to file an overlong petition, and we issued
an order allowing that motion. See ORAP 1.20(5) (authorizing
court to waive any rule for good cause shown). Although we have
allowed petitioner's belated motion, we note that, in the future,
a petitioner who files an overlong petition in a ballot title
case without first obtaining leave to do so runs a substantial
risk that the court will strike the petition and dismiss the
ballot title challenge without further notice.


We now turn to petitioner's ballot title challenges and
begin with his challenge to the caption. A ballot title caption
must contain "not more than 15 words that reasonably identif[y]
the subject matter of the state measure." ORS 250.035(2)(a). 
Petitioner raises eight objections to the caption. Only one of
his objections is well taken. Petitioner notes that the caption
says that the proposed measure would "limi[t] government
authority to waive land use regulations" but does not say that
the proposed measure also would relieve government of its
obligation to pay just compensation. Petitioner argues that the
"focus on the 'waiver' aspects of the petition is shortsighted,
and incorrectly leads the voter to believe the petition only
applies to 'waiver' authority, and not to compensation
authority."


Before explaining why we agree with that argument, we
first describe briefly the statutes that the proposed measure
would affect. Currently, if a land use law "restricts the use of
private real property or any interest therein and has the effect
of reducing the fair market value of the property," a public body
either must pay the property owner "just compensation" or waive
enforcement of the law use law. ORS 197.352(1) and (4). That
requirement is subject to several exceptions; for example, it
only applies if the property owner or a family member acquired
the property before the public body enacted the applicable land
use law. See ORS 197.352(3)(E) (identifying that
exception). (3)


As noted, the proposed ballot measure would eliminate a
public body's statutory obligation to pay just compensation or
waive the land use laws in two situations. As petitioner
observes, however, the certified caption tells only half the
story. It says the proposed measure "limits government authority
to waive land use regulations" but does not say that the proposed
measure also would relieve government of its statutory obligation
to pay just compensation.


As written, the caption implies that the measure would
eliminate a public body's ability to waive the land use laws in
certain situations but leave the public body obligated to pay
just compensation. Because the caption is underinclusive and
thus inaccurate, we refer it to the Attorney General for
modification. See, e.g., Terhune v. Myers, 338 Or 554, 558-59,
112 P3d 1188 (2005) (phrase "ballot measure" in summary was
underinclusive and thus inaccurate because it failed to disclose
that proposed measure would apply to both initiative petitions
and ballot measures); Kain v. Myers, 333 Or 497, 502-03, 41 P3d
1076 (2002) (phrase "prohibits post-election challenges" in
caption was inaccurate because it failed to disclose that
proposed measure would apply only to some post-election
challenges). (4)


Petitioner also challenges the "yes" and "no" vote
result statements. ORS 250.035(2)(b) and (c) require simple and
understandable statements of not more than 25 words that describe
the result if the people either approve or reject a measure. 
Petitioner contends that both the "yes" and "no" vote result
statements "suffer from many of the same flaws as the caption." 
He then lists the specific ways in which, he contends, those
statements are flawed. In listing the perceived flaws in the
"yes" and "no" vote result statements, petitioner repeats the
objections to the caption that we already have held are not
persuasive. (5)


Petitioner also raises an additional objection to the
"yes" vote result statement. That statement provides:


"RESULT OF 'YES' VOTE: 'Yes' vote prohibits
government from waiving land use regulation if proposed
use would reduce value of neighboring home, family
farm; allows certain single family dwellings."



Petitioner observes that the "yes" vote result statement refers
to the changes that section 2 of the proposed measure would
effect but says nothing about what section 3 would do. He argues
that that omission leaves the "yes" vote result statement
underinclusive and inaccurate.


As noted, section 2 provides that public bodies do not
have to pay just compensation or waive the land use laws when
allowing the proposed use would reduce the value of a neighboring
home or harm a neighboring family farm. Section 3 provides that
public bodies also do not have to pay just compensation or waive
the land use laws when a corporation or builder seeks to "divide,
build on or use land in violation of the land use laws[.]" 
Petitioner reasons that, by describing only the changes effected
by section 2 of the proposed measure, "[t]he 'yes' result
statement implies that the government may still 'waive' land use
regulations if the proposed use will not reduce the value of
neighboring properties." That implication is not accurate
because, as petitioner notes, section 3 of the proposed measure
eliminates a public body's obligation to pay just compensation or
waive the land use laws in another equally significant situation
-- when a corporation or developer seeks to use land in violation
of the land use laws. Because the "yes" vote result statement is
underinclusive and thus inaccurate, we refer it to the Attorney
General for modification.


Finally, petitioner challenges the Attorney General's
summary of the measure. ORS 250.035(2)(d) requires "[a] concise
and impartial statement of not more than 125 words summarizing
the state measure and its major effect." Petitioner reiterates
in large part the challenges to the caption that we already have
held are not persuasive. We have considered all the objections
that petitioner raises to the summary and conclude that the
summary substantially complies with the Attorney General's
obligation to summarize and describe the major effect of the
measure.




Ballot title referred to Attorney General for
modification.

GILLETTE, J., dissenting.

For the reasons that follow, I respectfully dissent
from the majority's choice to waive our rule and address the
merits of this petition to review a ballot title certified by the
Attorney General.

The problem that I have with this case is mentioned, if
not fully explained, by this paragraph in the majority opinion:


"Petitioner has filed a petition to review the
certified ballot title. * * * ORAP 11.30 sets out the
rules governing petitions for review of ballot titles. 
ORAP 11.30(4) provides that '[t]he body of the petition
shall be no longer than 10 pages * * *.' Because the
petition in this case was 16 pages long, this court
asked petitioner to show cause why it should not strike
his petition and, in view of the strict statutory time
limits for challenging a ballot title, dismiss his
ballot title challenge. In response, petitioner filed,
among other things, a late motion for leave to file an
overlong petition, and we issued an order allowing that
motion. See ORAP 1.20(5) (authorizing court to waive
any rule for good cause shown). Although we have
allowed petitioner's belated motion, we note that, in
the future, a petitioner who files an overlong petition
in a ballot title case without first obtaining leave to
do so runs a substantial risk that the court will
strike the petition and dismiss the ballot title
challenge without further notice."


___ Or at ___ (slip opinion at 2-3).

I enlarge the foregoing recital somewhat, in order to
place the reader more thoroughly in the picture respecting the
procedural issue involved. On November 28, 2005, petitioner
filed a timely petition for review of a ballot title certified by
the Attorney General for a proposed initiative measure labeled by
the Secretary of State as Initiative Petition 80 (2006). (6) 
The petition contained a body of 16 pages of substantive
discussion and argument, thereby violating the restriction on
such petitions set out in ORAP 11.30(4), which provides in part: 
"The body of the petition shall be no longer than 10 pages." 
Petitioner did not include with his petition any documentation
acknowledging the rule violation, much less any explanation of
his reasons for the violation and, if appropriate, a motion for
waiver of the rule in some form.

Upon receiving the petition, the Attorney General
responded with a seven-page answering memorandum. For some
reason, the Attorney General either did not notice, or decided
not to call to our attention, the problem with the length of the
petition. 

Thereafter, this court met to discuss the merits of the
petition. At that time, we determined that petitioner's brief
exceeded the permissible length. We therefore immediately
notified petitioner of the problem, indicated that it lay within
our authority to strike his petition and dismiss the proceeding
to review the Attorney General's ballot title, and asked him to
show cause why we should not do that. Petitioner's timely
response to our request put us in the posture in which we find
ourselves today. 

Petitioner's response includes this summary:


 "[Petitioner] moves the Court for permission to
enlarge the page limitation allowed for a Petition for
Review of a ballot title. In the alternative,
[petitioner] moves the Court for an order waiving the
page limit found in ORAP 11.30(4)."


In substance, the alternative forms of relief that petitioner
requests amount to the same thing –- waiver of our rule. (Either
that, or "enlarg[ing] the page limitation" was intended to ask
this court to reconfigure its entire set of rules governing
petitions of this kind –- something that we could not do in the
course of this particular proceeding.) I proceed on the
assumption that petitioner seeks a waiver. But, what facts or
circumstances does he offer in support of his request?

Petitioner first asserts that the page limit rule
should be waived, because


"The Petitions[ (7)] make substantial changes to
Oregon law. Changes of which the Court may not
understand [sic] the breadth and depth of their impact. 
Both Petitions address the ultra-complex issues
concerning the intersection of land use law and
property rights."


Aside from its expressed doubt respecting the intellectual
limitations of this court -- an issue concerning which I could
only be expected to take a self-serving position -- the foregoing
argument is without merit. The proposed measure involved in this
case is not simple, but this court has faced far more complex
ones through the years without a party finding it necessary even
to suggest that, within the narrow confines of the issues framed
by ORS 250.035(2), ten pages were not enough in which to make the
necessary arguments.

Petitioner next argues that his petitions were overlong
in part because "it is nearly impossible to describe the
underlying land use law and the effect the Petitions will have on
the law -- in addition to suggesting an alternative, more
accurate ballot title -- in the short space provided by the
ORAP." (Emphasis in original; footnote omitted.) But this
court's rules have not required a party to propose a specific
alternative ballot title or part of a ballot title for some time. 
(The requirement was removed from the rule in 2002.) That
argument, too, is without merit.

Petitioner next asserts that the Attorney General's
certified ballot titles for Initiative Petitions 80 and 81 "were
so inaccurate it would have been difficult -- if not impossible -- to meet the Court's page limitation." Petitioner argues:


"ORS 250.085 entitles [petitioner] to raise all the
challenges he raised in his comments on the draft
ballot titles. There is simply no way -- given the
totality of the inaccuracies of the ballot titles -- that [petitioner] could reasonably be expected to conform
his Petitions for Review to the requirements of ORAP
11.30(4). Given the conflict in the instant case between
Oregon law and the rules of this Court, the Court's rules
must succumb to the weight of Oregon statute. [Petitioner]
must be given the opportunity to raise all the objections
necessary to the ballot titles, notwithstanding the rules of
this Court."


In making that argument, petitioner does not quote the
pertinent wording of ORS 250.085. If he had done so, he might
have seen how incorrect his argument is. ORS 250.085(6) states
that, in ballot title review proceedings:


"the Supreme Court shall not consider arguments
concerning the ballot title not presented in writing to
the Secretary of State unless the court determines that
the argument concerns language added to or removed from
the draft title after expiration of the comment
period[.]"


Obviously, the wording in question is a limitation on what a
party may argue to this court, not a license to petitioners to
argue as much and as long as they wish. Petitioner's contrary
reading of the statute is not defensible, and the argument that
he derives from that reading is without merit.

Finally, petitioner argues simply that the petitions
and responses have been filed, no one demonstrably has been
harmed or prejudiced by the overlong briefing, and review should
continue. That is the only argument that has even a ghost of
merit, but it begs the question: What are the standards to be,
if one party violates this court's rule, the other party fails to
notice or raise it, and this court is left with the
unacknowledged violation? To his credit, petitioner appears to
recognize that simply ignoring the rule violation in such cases
is no way to run a railroad (or an appellate court process), but
he offers no help concerning what this court should do. That is
not surprising, because the question of what this court is
supposed to do is answered by the rule itself: We are supposed
to limit our consideration of ballot title challenges to those
that are made in a petition of ten pages or fewer.

And that is what we should have done here. 
Petitioner's arguments to us contain some interesting ideas, but
no hint of an explanation as to why he did not at least consult
the rules before preparing and filing his petition, and no good
reason to depart from the clear words of our rule.

The majority allowed petitioner's motion, but it never
explains why. As I hope the foregoing discussion demonstrates,
the lack of an explanation by the majority is itself easily
explained: No explanation is possible. Petitioner made no case
at all for a waiver. And, having failed to do so, he also failed
to take the other road that at least theoretically was open to
him -- he did not tender to this court an edited brief that
complied with the rules. (8) Under such circumstances, a
decent respect for the purpose of the rule and its limitations
should dictate the outcome here: Petitioner's petition should be
stricken and the underlying proceeding to review the ballot title
certified by the Attorney General for Initiative Petition 80
should be dismissed. I respectfully dissent from the majority's
alternative choice that gave lip service to the rule, but then
gave petitioner everything that he has asked for -- even
including a victory on the merits, thereby further delaying the
circulation of petitions for this proposed initiative
petition. (9)

Riggs and Balmer, JJ., join in this dissenting opinion.




APPENDIX
COPY OF INITIATIVE PETITION #80



Be it enacted by the people of the State of Oregon:



Section 1. Sections 2 to 6 of this act shall be known, and
may be cited, as The Home Owner and Family Farmer's Bill of
Rights.



Section 2. No Exemptions that Reduce Property Values. 
Government shall not waive a land use law to allow a use that
would reduce the value of a neighboring home or harm a
neighboring family farm. No use that would reduce the value of a
neighboring home or harm a neighboring family farm shall be the
basis of any demand for payment for complying with a land use
law.



Section 3. No Special Rights for Developers or Corporations. 
Government shall not allow any corporation or developer to
divide, build on or use land in violation of land use laws,
whether by waiver or any other means, nor shall government pay a
corporation or developer to comply with land use laws. A
developer or corporation shall not pay or contract with another
person to obtain government permits or approvals on behalf of or
in cooperation with the developer or corporation to divide, build
on or use land in violation of land use laws, whether by waiver
or any other means.



Section 4. Homestead Right. A property owner may build a
single family dwelling on the property owner's homestead tract if
the property owner could have built a single family dwelling on
the homestead tract under the land use laws in effect when the
property owner acquired the homestead tract. A property owner is
limited to one dwelling under this section and may not obtain
relief under both this section and under Chapter 1, Oregon Laws
2005.



Section 5. Burden of Proof on Government, Corporation, or
Developer. In any litigation brought by a home owner or family
farmer to enforce this 2006 act, the defendant government entity,
corporation or developer shall have the burden of demonstrating
compliance with a law. If the home owner or family farmer
prevails in the litigation, the court shall award the home owner
or family farmer costs and reasonable attorney fees, payable by
the defendants, in addition to any other appropriate relief.



Section 6. Definitions. As used in this 2006 Act,


(1) "Corporation" means any business entity other than
a sole proprietor or a family farm.


(2) "Developer" means a person or business entity
engaged in developing real property.


(3) "Family farm" means a farm owned by the farm
operator, by one or more family members of the
farm operator, by an entity created by the farm
operator or one or more family members of the farm
operator, or by any combination of the foregoing.


(4) "Government" means a public body as defined in ORS
174.109.


(5) "Homestead tract" means a tract as defined in ORS
215.010 owned by a property owner, as that tract
existed on January 1, 2005.


(6) "Land use law" means:


(a) A "comprehensive plan" or a "land use
regulation" as defined in ORS 197.015;


(b) Administrative rules or goals of the Land
Conservation and Development Commission or
Oregon Department of Transportation;


(c) Metropolitan service district regional
framework plans, functional plans, or
planning goals and objectives; or


(d) Statutes or administrative rules regulating
forest practices.


(7) "Waive" and "waiver" mean:


(a) To modify, remove, or not apply a land use
regulation, or to allow property to be used
notwithstanding a regulation, as provided in
Chapter 1, Oregon Laws 2005; or


(b) To issue any land use approvals or permits
pursuant to subsection (4)(a) of this
section.



Section 7. Sections 3 to 6 of this 2006 act are added to and
made a part of ORS chapter 197.



Section 8. This 2006 act supersedes any contrary law in force
on or before the effective date of this act.



Section 9. If a court of competent jurisdiction declares any
part of this 2006 act invalid, the remaining parts shall continue
to have full force and effect.











1. A copy of the proposed measure is attached as an
appendix.

Return to previous location.



2. The proposed measure would modify in some respects ORS
197.352, popularly known as Measure 37 (2004). In referring to
ORS 197.352, we express no opinion on whether that statute
complies with either the state or the federal constitution.

Return to previous location.



3. ORS 197.352 is more complex than our description of it
suggests. It is sufficient, however, for the purposes of this
opinion to describe the statute in general terms.

Return to previous location.



4. As noted, petitioner raises seven other objections to
the caption. We have considered each of those objections and
reject them without further discussion.

Return to previous location.



5. Petitioner does not challenge the "yes" vote result
statement on the ground that it refers to limiting a public
body's ability to waive the land use laws but says nothing about
relieving a public body of its obligation to pay just
compensation. The Attorney General, however, has the authority
to modify the ballot title on referral to ensure that it
accurately describes the proposed measure. See Kain v. Myers,
336 Or 116, 123 n 3, 79 P3d 864 (2003) (recognizing that
authority).

Return to previous location.



6. He also filed at that time a petition challenging the
Attorney General's certified ballot title for a companion
measure, Initiative Petition 81. That petition suffered from the
same flaw as the present one, and I take the same view respecting
it that I offer in this dissenting opinion.

Return to previous location.



7. Petitioner refers throughout his arguments to the
"petitions," plural, because he submitted a combined response to
this court's orders to show cause respecting Initiative Petitions
80 and 81 (2006). Rather than go through the additional editing
required to conform his arguments to the issues respecting this
case alone, I simply have quoted them verbatim.

Return to previous location.



8. I say "theoretically," because a series of practical
and analytical considerations would apply to any such tender. In
the first place, it would involve the profoundly untimely filing
of the petition. If, however, it could be treated as a filing
relating back to the original, timely (and overlong) petition (an
issue as to which I take no position), there still would remain
the problem of whether to let the Attorney General file a new
response. Obviously, both processes would extend significantly
the length of time involved in resolving an issue that long since
should have been settled. Every delay would make it more
difficult for the principal sponsors of the measure to gather the
signatures that they needed to place the proposed measure on the
ballot. Any jury-rigged process based on a late tender of a
conforming brief would need to take such matters into
consideration. Nonetheless, the approach has some appeal, and
petitioner's failure to offer it as an alternative is surprising.

Return to previous location.



9. Because I do not believe that we should be addressing
them, I express no opinion respecting the merits of any of the
arguments that petitioner advances.

Return to previous location.